IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00907–ZLW–KMT

GARY H. FUGATE,

      Plaintiff,

v.

KEVIN ESTEP,
EMILY BOND,
BRET YOUNGBLOOD,
REBBECCA ADKINS, and
STACY SMITH, in their individual and official capacities,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments.  This matter is before the court on Defendants' "Motion to Dismiss" ([Doc. No. 22] [filed August 21, 2009] [hereinafter "Mot."]) and Plaintiff's "Motion for Summary Judgment or Default Entry According to Rule 55" ([Doc. No. 47] [filed November 16, 2009] [hereinafter "MSJ"]).

      Plaintiff filed his Response to Defendants' Motion to Dismiss on September 1, 2009. ([Doc. No. 24] [hereinafter "Resp."].)  Defendants filed their Reply on September 15, 2009. ([Doc. No. 25] [hereinafter "Reply"].)  On October 26, 2009, this court granted the parties leave

to submit Surreply and Surresponse briefs.  (Doc. No. 41.)  On September 23, 2009, Plaintiff

filed his Surreply.  ([Doc. No. 30] [hereinafter "Surreply"].)  On October 26, 2009, Defendants

filed their Surresponse.  ([Doc. No. 43] [hereinafter "Surresp."].)

Defendants filed their Response to Plaintiff's Motion for Summary Judgment on

December 4, 2009.  ([Doc. No. 49] [hereinafter "MSJ Resp."].)  Plaintiff filed his Reply on

December 23, 2009.  ([Doc. No. 53] [hereinafter "MSJ Reply"].)  Jurisdiction is premised upon

42 U.S.C. § 1983 (2009).  These motions are ripe for review and recommendation.

### STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Amended Prisoner Complaint ([Doc. No.

11] [filed May 29, 2009] [hereinafter "Compl."]) and the parties' submissions with respect to

this Recommendation.  At the time of the incidents alleged in the Complaint, Plaintiff was an

inmate in the custody of the Colorado Department of Corrections (hereinafter "CDOC"), residing

at the Cheyenne Mountain Re-Entry Center (hereinafter "CMRC") in Colorado Springs,

Colorado.  (Compl. at 2.)  According to Plaintiff, Defendant Kevin Estep (hereinafter "Estep")

served as CMRC Executive Director and Defendant Brett Youngblood (hereinafter

"Youngblood") served as the CMRC Clinical Director.  (*Id*. at 2–3.)

Plaintiff's claims arise out of his placement in administrative segregation in December

2008.  Plaintiff states that on December 11, 2008, "during the 'lockdown' of [unit] 1A, the unit

[residents] w[ere] told that whenever [they] were going to and from the dayroom for unit

meetings that they were . . . to put their hands behind their backs."  (*Id*. at 4.)  Plaintiff claims he

was unable to place his hands behind his back due to a prior injury to his shoulders.  (*Id.*)

Plaintiff alleges Defendant Youngblood ordered him to place his hands behind his back.  (*Id.*)

Plaintiff claims that, when he attempted to explain why he was unable to do so, Defendant

Youngblood "said he would be writing [Plaintiff] up for talking and refusing to put his hands

behind his back."  (*Id.*)  Plaintiff states that he attempted once more to explain his inability to

comply with the order.  (*Id.*)  Plaintiff alleges that, in response, Defendant Youngblood told

Plaintiff to "shut up."  (*Id.*)  Plaintiff maintains that "on 12-11-08 [Defendant Youngblood]

denied [Plaintiff] his [F]irst Amendment[] right to free speech (to defend himself against verbal

attack) and to explain his physical limitations."  (*Id.* at 6.)

     The next day, during a meeting, Plaintiff states Defendant Youngblood said to him,

"[Y]ou are a liar.  You have no medical restrictions."  (*Id.* at 4–5.)  Plaintiff claims that when he

attempted to explain that a prior shoulder injury precluded him from placing his hands behind his

back, Defendant Estep ordered him to be taken to the administrative segregation unit.  (*Id.* at 5.)

Plaintiff states that he was held in administrative segregation from December 12, 2008 to

January 5, 2009, a total of twenty-four days.  (*Id.*)  Plaintiff alleges Defendant Estep violated his

due process rights under the Fourteenth Amendment by placing him in administrative

segregation without reason, notice of the charges, or an investigation.  (*Id.* at 5–8.)  Plaintiff also

appears to claim Defendant Estep violated his "right to be heard according to the First

Amendment" because he "would not allow [Plaintiff] to speak" prior to sending him to

segregation.  (*Id.* at 8.)

     Plaintiff states that upon his release from segregation, Defendant Rebecca Adkins

(hereinafter "Adkins"), a Case Manager, "wrote him up for 'Disobeying a Direct Order' not to

talk." (*Id*. at 5.)  While Plaintiff has failed to specify when and by whom this "direct order" was given, Plaintiff appears to refer to the incident on December 11, 2008 in which Defendant Youngblood told Plaintiff to shut up and Plaintiff failed to do so.  (*Id*. at 4.)  Plaintiff claims Defendant Adkin's citation for disobeying a direct order not to talk was "improperly written and irrelevant[,] . . . [and] had no merit." (*Id*.)  Plaintiff does not explain in what way the citation was "improperly written."  Plaintiff claims he was provided a hearing concerning the charges and that certain unspecified "procedural deficiencies were brought out." (*Id*. at 9.)  Plaintiff states that, despite these issues, Defendant Stacey Smith (hereinafter "Smith"), Unit/IT Manager for CMRC, found him guilty of disobeying a direct order not to talk.  (*Id*. at 9.)  Plaintiff alleges that, on appeal, Defendant Emily Bond (hereinafter "Bond"), CMRC Deputy Director of Security, upheld his conviction.  (*Id*.)  Plaintiff asserts that Defendant Bond upheld his conviction "possibly because she was named in the 'Intent to Bring Civil Action.' " (*Id*.) Plaintiff maintains Defendants Adkins, Smith, and Bond violated his "1, 5, 8, and 14 Const. Amend. rights." (*Id*.)

Plaintiff seeks immediate release from CMRC, that his disciplinary conviction be overturned and expunged, and $1,250,000.00 in damages.  (*Id*. at 13.)  Defendants move to dismiss on the following grounds: 1) failure to state a claim upon which relief may be granted; 2) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); 3) Plaintiff's requested relief in the form of release from CMRC is unavailable; 4) Defendants are entitled to qualified immunity; and 5) Plaintiff has failed to exhaust administrative remedies.  (Mot.)

## STANDARD OF REVIEW

*1.*    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A

court may not assume that a plaintiff can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint").  The plaintiff's *pro se* status does not entitle

him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

*2.*    ***Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments." *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1940. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the

6

elements of a cause of action will not do." *Id.* at 1949 (citation omitted).  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

I.      *Defendants' Motion to Dismiss*

      A.      *Prison Litigation Reform Act*

      Defendants contend that Plaintiff's claims should be dismissed for failure to exhaust

administrative remedies as required by the Prison Litigation Reform Act (hereinafter "PLRA").

(Mot. at 17.)  Prior to filing this civil action, Plaintiff was required to exhaust administrative

remedies pursuant to the PLRA.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Section 1997e(a)

provides:

> [n]o action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a)(2009).  "[T]o properly exhaust administrative remedies prisoners must

complete the administrative review process in accordance with" prison procedural rules.  *Jones*

*v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted).  Furthermore,

"the burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  The

Tenth Circuit has recognized that dismissal pursuant to Section 1997e(a) for failure to exhaust

administrative remedies cannot usually be made on pleadings without proof.  *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007).

CDOC Administrative Regulation (hereinafter "Admin. Reg.") 850-04 sets forth a three-step grievance process for inmate grievances.[1]  CDOC Admin. Reg. 850-04 § IV(G)(2).  In the Complaint, Plaintiff admits that he did not complete the grievance procedure.  (Compl. at 10–11.)  Defendants contend this admission is a sufficient basis upon which to dismiss Plaintiff's claims for failure to exhaust.  (Mot. at 17.)  However, CDOC Admin. Reg. 850-04 § IV(A)(5) states, "this grievance procedure may not be used to seek review of [Code of Penal Discipline] convictions[] [and] administrative segregation placement," since such review has "exclusive appeal procedures."

Plaintiff's claims clearly seek review of his COPD conviction and placement in administrative segregation.  Thus, according to the plain language of Admin. Reg. 850-04 § IV(A)(5), the three-step grievance procedure was inapplicable to Plaintiff's claims.  Defendants have failed to set forth the administrative review procedures actually available to Plaintiff and whether he had exhausted them.  The court finds that, at the pleadings stage, Defendants have failed to carry their burden to show a lack of exhaustion.  In any event, this case need not be decided based on the issue of exhaustion because it may be concluded more efficiently on the merits.  *See Miller v. Mullin*, 354 F.3d 1288, 1297–98 (10th Cir. 2004) ("In the interest of

---

[1] The court may take judicial notice of the CDOC's administrative regulations.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations).

judicial economy, [w]e need not and do not address these issues, however, because the case may be more easily and succinctly [decided] on the merits.") (internal quotation marks and citations omitted).

### B.      First Amendment

Plaintiff's First Amendment claims contained in Claim One against Defendants Youngblood and Estep are based upon Plaintiff's assertion that he is entitled to a "First Amendment right to defend himself from verbal assault" and/or to explain his physical limitations.  (*Id.* at 5–8.)  However, Plaintiff has cited no law, nor does the court's research reveal any law regarding a First Amendment right to defend oneself against verbal attack or to explain one's physical limitations in the prison setting.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.") (citations omitted).  The preservation of internal order and discipline, and the maintenance of institutional security, are legitimate penological objectives identified by the Supreme Court.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49 (1987); *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991).  Plaintiff has alleged that his unit was in lockdown and inmates had been ordered to place their hands behind their backs at the time Defendant Youngblood told him to shut up.  By Plaintiff's own admission, his alleged freedom

of expression was limited in the context of the maintenance of institutional security.  Prisoners'

First Amendment rights "may be curtailed whenever the institution's officials in the exercise of

their informed discretion, reasonably conclude that such [rights] . . .  possess the likelihood of

disruption to prison order or stability, or otherwise interfere with the legitimate penological

objectives of the prison environment."  *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S.

119, 132 (1977).

 With regard to Defendant Estep, to the extent the Complaint can be read to assert a First

Amendment right to present a defense, as will be discussed below, Plaintiff was not entitled to

such process prior to being sent to administrative segregation.

 Plaintiff has failed to state a claim against Defendants Youngblood and Estep for

violation of a right protected by the First Amendment.

  **C.**  ***Procedural Due Process***

   **1.**  ***Placement in Segregation***

 Plaintiff alleges Defendant Estep violated his Fourteenth Amendment procedural due

process rights by placing him in administrative segregation "without written [n]otice of

[c]harges, or [an] [i]nvestigation."  (Compl. at 5.)  Defendants contend Plaintiff has failed to

state a claim for violation of his procedural due process rights under the Fourteenth Amendment.

(Mot. at 10–12.)  "The Due Process Clause guarantees due process only when a person is to be

deprived of life, liberty, or property."  *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242

(10th Cir. 2000) (quotations omitted).  To maintain his due process claim, Plaintiff must prove

two elements: (1) that a recognized liberty or property interest has been interfered with by the

Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The Tenth Circuit requires that district courts examine the conditions of confinement before they conclude whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citation omitted).  A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the condition in question is a dramatic departure from what would be expected of a person serving a similar sentence.  In the context of special segregation of a prisoner from general population, the *Sandin* test is still applicable.  *Payne v. Friel*, 266 F. App'x 724, 728 (10th Cir. 2008) (emphasis in original).  This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation, (2) differs significantly from what it would have been had the prisoner remained in the general prison population, (3) increases the duration of a prisoner's sentence, (4) is for an indefinite term, and (5) furthers a legitimate interest.  *Sandin*, 515 U.S. at 484–87; *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

An inmate does not have an inherent liberty interest in remaining in the general population and avoiding being placed in administrative segregation.  *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006).  Other than alleging that he was "double-bunked" in the

11

segregation unit (Compl. at 5, 7), a situation not atypical in any prison, Plaintiff's Complaint

lacks sufficient facts concerning the conditions of his confinement in segregation to plausibly

constitute atypical and significant hardship.  It is well established that double-celling is not

unconstitutional *per se*.  *See Rhodes v. Chapman*, 452 U.S. 337, 347–50 (1981) (rejecting an

Eighth Amendment challenge based on double-celling of inmates).  In order to allege a

constitutional violation based on double-bunking, a prisoner must allege that the double-bunking

subjected him to the unnecessary or wanton infliction of pain or lead to a deprivation of

essentials such as safety or sanitation.  *See id.* at 348 (Where it has not impacted "essential food,

medical care, or sanitation" or "increase[d] violence among inmates or create[d] other conditions

intolerable for prison confinement" or cause[d] deprivations of other programs such as work and

education, double-bunking does not violate the Constitution.).

Further, the mere duration of Plaintiff's confinement in segregation, i.e., twenty-four

days, does not itself serve to create a liberty interest, as "the Supreme Court has held that a

placement in disciplinary segregation for thirty days did not impose an atypical and significant

hardship." *Byrd v. Cornell Corr., Inc.*, 60 F. App'x 191, 193 (10th Cir. 2003) (citing *Sandin*,

515 U.S. at 486); *see Clayton v. Ward*, 232 F. App'x 827, 831–32 (10th Cir. 2007) (dismissal of

due process claim affirmed because twenty-six day stay in administrative segregation "was of a

relatively short duration" and Plaintiff failed to assert any facts in support of his allegation that

such confinement was an atypical and significant).

There is no indication that being sent to the segregation unit increased the duration of

Plaintiff's sentence, and he admits that his confinement to segregation was not indefinite; it

12

lasted a total of twenty-four days.  (Compl. at 5.)  Plaintiff's Complaint makes clear that he was placed in segregation by Defendant Estep as a result of his refusal to place his hands behind his back and continuing to argue with Defendant Youngblood after being told to "shut up."  The action clearly relates to and furthers a legitimate penological interest—prison security and order. Plaintiff's placement in segregation was not arbitrary, but rather a response to a legitimate interest in maintaining prison order and security, especially during a lock-down situation.  *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987).  Prison officials' exercise of discretion should generally be afforded appropriate deference and flexibility.  *Sandin*, 515 U.S. at 482.

Plaintiff has failed to allege facts sufficient to state a plausible claim that his confinement in segregation constituted an atypical and significant hardship.  Since Plaintiff has failed to adequately set forth facts supporting a claim that he was deprived of "any liberty interest to which he was entitled, no particular process was constitutionally due or required."  *Templemen v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  Accordingly, Plaintiff's Claim for violation of procedural due process rights is properly dismissed.

## 2.   *Disciplinary Conviction*

### (a)   *Alleged Procedural Deficiencies*

Plaintiff's claim against Defendants Adkins, Smith, and Bond is mostly unintelligible, and Plaintiff has not specified the theory under which Defendants Adkins, Smith, and Bond allegedly violated his constitutional rights.  However, reviewing the Complaint liberally, *Trackwell*, 472 F.3d at 1243, Plaintiff appears to allege that this disciplinary conviction violated his Fourteenth Amendment procedural due process rights since he was convicted despite certain

13

unspecified "procedural deficiencies." (*Id.*)  However, Plaintiff has failed to allege what those

deficiencies were, i.e., what process he believes he was due and that he did not receive.  To the

extent the term "procedural deficiencies" refers to Plaintiff's alleged placement in segregation

without reason, notice of the charges, or an investigation, as noted, Plaintiff was not entitled to

any such procedures prior to being sent to segregation.  *See Templemen*, 16 F.3d at 371.

### *(b)   Alleged Bias of Reviewing Officials*

Plaintiff's suggestion that Defendant Bond was biased is speculative by his own

admission.  Plaintiff states, "Emily Bond upheld the conviction, <u>possibly</u> because she was named

in the 'Intent to bring civil action." (Compl. at 9.)  However, in order to survive dismissal

pursuant to Rule 12(b)(6), the Complaint's "[f]actual allegations must be enough to raise a right

to relief above the speculative level."  *Dias v. Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Plaintiff has failed to allege facts sufficient to establish a violation of the Due Process Clause of

the Fourteenth Amendment against Defendant Bond.

### *(c)   Heck v. Humphrey*

Plaintiff claims Defendants Adkins, Smith, and Bond violated his constitutional rights

because his "write up was unconstitutional and inaccurate." (Compl. at 9.)  Defendants claim

that, to the extent the Complaint can be read to assert a challenge to Plaintiff's January 5, 2009

disciplinary conviction, such a claim for damages is barred under *Heck v. Humphrey*, 512 U.S.

477 (1994).  In *Heck*, the Supreme Court "held that where success in a prisoner's § 1983

damages action would implicitly question the validity of conviction or duration of sentence, the

litigant must first achieve favorable termination of his available state, or federal habeas,

14

opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540

U.S. 749, 751 (2004); *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Cardoso v.*

*Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007).  While "[t]his rule also applies to challenges to

punishments imposed as a result of prison disciplinary infractions," *Cardoso*, 490 F.3d at 1199

(citing *Edwards*, 520 U.S. at 648), "*Heck* does not apply 'categorically to all suits challenging

prison disciplinary proceedings,' " *id.* at 754.  "The assumption is that the incarceration that

matters under *Heck* is the incarceration ordered by the original judgment of conviction, not

special disciplinary confinement for infraction of prison rules."  *Id.* at 751 n.1.

　　　Plaintiff has failed to describe what punishment was imposed as a result of his

disciplinary conviction.  Therefore, the court has no way of determining whether a judgment in

Plaintiff's favor would implicitly question the validity of his original judgment of conviction or

duration of sentence.  At this stage of the proceedings, it is unclear whether the *Heck v.*

*Humphrey* rule is applicable to Plaintiff's damages claims.  However, in light of Plaintiff's

failure to set forth a cognizable constitutional violation with respect to his conviction, this

finding does not impact this court's recommendation.

　　　**D.　　Eighth Amendment**

　　　Throughout the Complaint, Plaintiff alleges "[d]eliberate indifference to [Plaintiff's]

medical needs" (Compl. at 5, 8), apparently associated with his shoulder condition.  Such

language is typically identified with a claim for violation of the Eighth Amendment.  Prison

officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs

of prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429

U.S. 97, 104 (1976) (internal quotation marks omitted).  The deliberate indifference test has two components: (1) an objective component requiring that the medical need be sufficiently serious; and (2) a subjective component requiring that the offending officials act with a sufficiently culpable state of mind.  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)).  "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

Here, Plaintiff has failed to allege any facts indicating his shoulder injury required medical attention at the time of the incidents alleged in the Complaint, or that he suffered any pain associated with his shoulder condition as a result of Defendants' actions or that Defendants failed to adequately treat any possible injury.  Plaintiff's shoulder condition appears to have been due to a past injury for which there is no indication he was presently receiving or in need of medical treatment.  Plaintiff has failed to set forth facts sufficient to state a claim for deliberate indifference to medical needs in violation of the Eighth Amendment.

### E.     *Discrimination based on Disability*

Plaintiff also vaguely alleges "[d]iscrimination . . . because of [his] medical disabilities." (Compl. at 5.)  Again, reviewing the Complaint liberally, Plaintiff appears to allege that his placement in segregation was caused as a result of his shoulder injury and, therefore, constitutes

16

discrimination.  Title II of the Americans with Disabilities Act[2], 42 U.S.C. § 12131, et seq.

(hereinafter "ADA") provides that "no qualified individual with a disability shall, by reason of

such disability, be . . . subjected to discrimination by any such [public] entity."[3]  42 U.S.C. §

12132.  "To prove a violation of Title II, a party must . . . establish: (1) that he is a 'qualified

individual' with a disability; (2) that he was . . . discriminated against by a public entity; and (3)

that such . . . discrimination was due to his disability."  *Harrington v. Wilson*, 2006 WL

2724094, at *14 (D. Colo. 2006); *see* 42 U.S.C. § 12132.

First, the court notes that Plaintiff was placed in segregation and later charged because of

his talking in the face of direct orders not to do so.  However, to satisfy the ADA's definition of

disability, a plaintiff must "(1) have a recognized impairment, (2) identify one or more

appropriate major life activities, and (3) show the impairment substantially limits one or more of

those activities."  *Berry v. T-Mobile*, 490 F.3d 1211, 1216 (10th Cir. 2007) (emphases added).

Pursuant to 42 U.S.C. § 12102(2), major life activities "include, but are not limited to, caring for

oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working," as well as "operation of a major bodily function, including but not limited to,

---

[2] Title II applies to state prisons and prison services.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

[3] 42 U.S.C. § 12132 also prohibits exclusion from participation in or denial of "the benefits of the services, programs, or activities of a public entity" by reason of disability. However, based on the factual allegations in the Complaint, only the discrimination prong of § 12132 applies in this case.

functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." The only activity Plaintiff alleges his shoulder condition prevents him from doing is placing his hands behind his back in the manner ordered by prison officials. (Compl. at 4–5.) Plaintiff has failed to set forth facts sufficient to show that his alleged inability to place his hands behind his back constitutes disruption of a major life activity, or that his alleged shoulder impairment limits any other major life activity.

Plaintiff has failed to allege facts showing that he has a qualifying disability—the threshold element for an ADA claim. Plaintiff has, therefore, failed to state a claim for discrimination under Title II of the ADA and the court need not address the remaining elements.

### F.    *Qualified Immunity*

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009). Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.* at 818. The plaintiff bears a heavy two-part burden in establishing that the defendant violated clearly established law. *Teague v. Overton*, 15 F. App'x 597, 600 (10th Cir.

18

2001).  "When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity."  *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

Plaintiff has failed to sufficiently allege a violation of a statutory or constitutional right by any defendant.  Therefore, Defendants Youngblood, Estep, Adkins, Smith, and Bond are entitled to qualified immunity in their individual capacities.

### G.   Costs and Attorney Fees

Defendants request costs and attorney fees.  (Mot. at 17–18.)  In *Hughes v. Rowe*, 449 U.S. 5, 14–16 (1980), the Supreme Court held that attorney's fees could be assessed against a *pro se* plaintiff in a Section 1983 civil rights action and articulated the standard to be used in determining whether a fee award was justified.  *Houston v. Norton*, 215 F.3d 1172, 1174–75 (10th Cir. 2000).  The Court held that under this "stringent" standard:

> [t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. . . .  [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless . . . .  These limitations apply with special force in actions initiated by uncounseled prisoners. Faithful adherence to the principles of *Haines v. Kerner*, 404 U.S. 519 (1972), dictates that attorney's fees should rarely be awarded against such plaintiffs.

449 U.S. at 14–15 (citations and quotations omitted).  Although the court has found in favor of Defendants, Plaintiff's claims are not so frivolous, unreasonable, or groundless to warrant a grant of attorney's fees to Defendants pursuant to this stringent standard.

## II.     *Plaintiff's Motion for Summary Judgment and/or Entry of Default*

Plaintiff moves for summary judgment and/or default judgment.  (MSJ.)  As grounds,

Plaintiff attempts to refute the arguments raised in Defendants' Motion to Dismiss and further

argues Defendants have failed to present a defense to his allegations.  (*Id*. at 2.)  Fed. R. Civ. P.

55(a) provides, "When a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

must enter the party's default."  Plaintiff filed his Amended Prisoner Complaint on May 29,

2009.  (Compl.)  Defendants waived service on June 22, 2009 and, therefore, their Answers were

due on August 21, 2009.  (Doc. No. 16.)  Defendants filed their Motion to Dismiss on August 21,

2009.  (Mot.)  "A motion to dismiss is a proper defense pleading under Fed. R. Civ. P. 12(b)(5)

and (6), and Rule 12(a)(4) further provides that the service of such a motion alters the period for

answering."  *Moomchi v. Univ. of N.M.*, 72 F.3d 138, 1995 WL 736292, *1 (10th Cir. Dec. 8,

1995).  Since Defendants submitted a timely defensive pleading, they cannot be deemed to have

been in default.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.

v. Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  Moreover, "[a]s a matter of basic civil

procedure, in order for a court to rule on a summary judgment motion, the suit must first make it

past the pleadings stage." *Thompson v. Gibson*, 17 F. App'x 753, 756 (10th Cir. 2001).  The

court has found that Plaintiff's claims should be dismissed for failure to state any claims for

relief pursuant to Fed. R. Civ. P. 12(b)(6).  Accordingly, Plaintiff is not entitled to judgment as a

matter of law.

       **WHEREFORE**, for the foregoing reasons, the court respectfully

       **RECOMMENDS** that Defendants' "Motion to Dismiss" (Doc. No. 22) be **GRANTED**

and this case be **DISMISSED** in its entirety.  The court

       **FURTHER RECOMMENDS** that Plaintiff's "Motion for Summary Judgment or

Default Entry According to Rule 55" ([Doc. No. 47] [filed November 16, 2009]) be **DENIED**.

## ADVISEMENT TO THE PARTIES

       Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real

Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059–60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 26th day of January, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge